```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHILIP BEGLEY,

                Plaintiff,        1:18-cv-00224-MAT
        -vs-                      DECISION AND ORDER

NANCY A. BERRYHILL,

                Defendant.
_____
```

## I. Introduction

Philip Begley ("Plaintiff"), represented by counsel, brings this action under Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of Nancy A. Berryhill, former Acting Commissioner of Social Security ("the Commissioner" or "Defendant"), denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted. The Commissioner's decision is affirmed.

## II. Procedural Status

Plaintiff protectively filed for SSI on February 7, 2014, alleging disability since September 6, 2012. This application was denied initially on April 22, 2014. At Plaintiff's request, a hearing was conducted by administrative law judge Lynette Gohr

("the ALJ") in Buffalo, New York, on August 5, 2016. Plaintiff, represented by counsel, appeared and testified via videoconference from Belmont, New York. David Festa, a vocational expert ("the VE") also appeared and testified. On counsel's advice, Plaintiff amended his alleged onset date to June 5, 2014. T.38.[1]

On August 24, 2016, the ALJ issued an unfavorable decision. T.7-19. At step one of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that Plaintiff's "severe" impairments were a seizure disorder, diabetes, diabetic neuropathy, cervical radicuopathy, obesity, partial amputation of his first and second toes on his right foot, hypertension, and right-sided carpal tunnel syndrome. With regard to Plaintiff's history of stroke, the ALJ found insufficient evidence that this episode continued to have more than a *de minimis* affect on his ability to perform physical or work activities, and therefore it was non-severe; Plaintiff does not challenge this finding on appeal. Similarly, the ALJ found that Plaintiff's medically determinable impairment of affective disorder does not cause more than minimal limitations in his ability to perform basic mental work activities and was non-severe. Again, Plaintiff does not take issue with this finding on appeal. At step three, the ALJ

---

[1] Citations to "T." refer to pages in the certified administrative transcript.

determined that Plaintiff's impairments did not meet or medically equal a listed impairment. Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform a limited range of light work with the following limitations: he could perform frequent, but not constant, fine and gross manipulation of objections with his right arm and hand; he could only occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs; and he could never work at unprotected heights, work around dangerous mechanical moving parts, or climb ladders, ropes, or scaffolds. T.14. At step four, based on the RFC, the ALJ found that Plaintiff could perform his past relevant work as a sales clerk. T.17-18. The ALJ proceeded to step five and determined that Plaintiff, a younger individual (48 years-old) with a high school equivalency degree, could perform the requirements of the following representative light exertional jobs that existed in significant numbers in the national economy: routing clerk, office helper, and checker. T.17-19. Accordingly, the ALJ entered a finding of "not disabled."

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making the ALJ's decision the final decision of the Commissioner. Plaintiff then timely commenced this action.

**III. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## IV. Discussion

### A. Summary of the Parties' Arguments

Plaintiff asserts that remand is required because the ALJ "relied heavily on stale State agency medical opinions throughout his opinion," and because "the ALJ's RFC assessment is based almost entirely on the ALJ's lay judgment." Plaintiff's Memorandum of Law ("Pl.'s Mem.") at 7. Plaintiff then asserts that "[t]he only medical opinion available" was consultative physician Dr. Michael Rosenberg's, but because "[t]he ALJ rejected the moderate limitations assessed by Dr. Rosenberg" as "allegedly inconsistent with Plaintiff's treatment notes[,]" this left the RFC based solely on the ALJ's lay judgment. *Id.* The Commissioner responds that Plaintiff has misconstrued the ALJ's decision, which permissibly gave "partial weight" to Dr. Rosenberg's opinion. T.17. The Commissioner argues that the ALJ's evaluation of Dr. Rosenberg's opinion was supported by substantial evidence. Plaintiff additionally contends that it was improper for the ALJ to give Dr. Rosenberg's opinion even partial weight because the "examination pre-dated both a partial amputation of Plaintiff's foot after a lawn mower accident, seizure disorder and a cerebral vascular accident." *See* Pl.'s Mem. at 11. The Commissioner counters that the ALJ explicitly considered those facts, and that substantial evidence supports the ALJ's determination that these impairments did not cause disabling limitations.

**B. Point I: Alleged Failure by the ALJ to to Properly Weigh the Consultative Physician's Opinion**

**1. Dr. Rosenberg's Opinion**

In April 2014, two months after Plaintiff applied for disability benefits, Michael Rosenberg, M.D., performed a consultative physical examination of Plaintiff at the Commissioner's behest. T.238-42. Plaintiff reported a history of diabetes, high blood pressure, back and neck pain, intermittent dizziness, and depression, for which he was not taking medication or participating in treatment. He experienced one seizure at age 15, but had not had any recurrent seizures. Plaintiff's daily activities included cooking, cleaning, washing laundry, shopping, watching television, listening to the radio, and performing personal care.

On examination, Plaintiff walked and stood normally, could perform a full-range squat, and was able to rise from a chair and climb on and off the examination table without difficulty. He reported some mild neck and hip pain and could not walk on his heels or toes. Plaintiff's range of motion was decreased in his neck, back, right shoulder, elbows, right wrist, right hip, and right knee and ankle. Muscle strength and sensation in his right arm and right leg and foot were mildly reduced; otherwise, muscle strength was normal throughout the rest of his body. His grip strength and hand and finger dexterity were intact bilaterally. Dr. Rosenberg diagnosed Plaintiff with diabetes, hypertension, back

and neck pain, a resolved seizure disorder, and a history of dizziness. For his medical source statement, Dr. Rosenberg opined that Plaintiff had moderate limitations in bending, lifting, pushing, pulling, reaching repetitively with his arms, twisting and turning his neck, performing overhead activities, performing fine manipulation, and carrying heavy objects. T.242. Dr. Rosenberg assigned no limitations with regard to Plaintiff's ability to sit, stand, or walk.

### 2. Medical Issues Subsequent to Dr. Rosenberg's Report

On June 5, 2014, the amended onset date, Plaintiff "slipped on a bank while mowing" his lawn, and his lawnmower partially amputated his first and second toes. T.307-10. Anwar Khan, M.D., and Puneet Chahal, D.P.M., performed surgery to debride and treat Plaintiff's injured toes. Post-surgery, Plaintiff was instructed to use crutches and bear minimal weight on his right foot. T.310. At discharge, Plaintiff's wound "look[ed] good," and he was "doing fairly well." *Id.*

In July of 2015, Plaintiff reported to Physician's Assistant Kari Andera ("PA Andera") that he had some toe pain, for which she prescribed Tramadol. T.275. There is a note that Plaintiff would be referred to Gabriel Yacob for pain management, *id.*, but it does not appear that Plaintiff ever followed up with the referral. Although Plaintiff complained of pain and numbness at subsequent doctor appointments, the pain was located in his shoulders and neck, and

the numbness was in his right anterior thigh and finger tips. *E.g.*, T.262. It does not appear that Plaintiff pursued any specific follow-up treatment with regard to the partial toe amputations.

On December 26, 2015, Plaintiff had a stroke and a simple partial seizure. T.286, 324-26, 336-39, 341-43. At the time, Plaintiff "was not taking his medications regularly," and he "was uncontrolled with all of his conditions," including his diabetes mellitus and hypertension. T.279. Plaintiff displayed a normal range of motion in his neck, arms, and legs; his neurological function and motor function were normal. T.327, 342. His physicians diagnosed him with diabetes, syncope, and an epileptic seizure. He was prescribed insulin along with pain and anti-epileptic medications. T.329-30. Plaintiff testified that he had no subsequent seizures. T.44-45.

On December 29, 2015, Naveed Shahid, M.D., diagnosed Plaintiff with an atrial septal defect, ischemic stroke, and epilepsy. Medications were prescribed for these conditions. T.289-90, 295-301, 338-39. However, Dr. Shahid indicated that Plaintiff's atrial defect did not require treatment unless he had recurrent episodes. T.279, 338. At discharge, Plaintiff's condition was described as "[g]ood" and "[s]table." T.293. Dr. Shahid stated that Plaintiff should not drive or operate heavy machinery but could resume activities as tolerated. T.293, 339.

On February 8, 2016, Plaintiff reported to Ann N. Anderson, Physician's Assistant ("PA Anderson"), that he "does not have any residual effects" from his stroke and seizures. T.276-77. He stated that he "walks 5 miles a day," had not had a podiatry check in "many years," and had no weakness, numbness, or dizziness. T.276. On examination, Plaintiff walked normally and had full range of motion throughout his body without any swelling or deformity; in his extremities, he had full range of motion without clubbing, cyanosis, or swelling. T.277. His diabetic foot exam revealed normal pulses, sensation, and motor function. PA Anderson stated that Plaintiff demonstrated no "abnormal findings." T.277. Although Plaintiff was not taking his blood pressure medication, his blood pressure was normal. T.277-78. Later that month, PA Anderson observed that Plaintiff was "doing well" and walked normally, with full range of motion throughout his body and normal neurological function. T.280. Although PA Anderson prescribed pain medication, Plaintiff indicated that he did not need the medication regularly and that "a month supply last[ed] him 2-3 months." T.281. In March 2016, PA Anderson noted that Plaintiff was walking normally, was "doing well," had "no active complaints," and had normal neurological function throughout his body. T.282-83.

### 3. The ALJ's Weighing of Dr. Rosenberg's Opinion

The ALJ determined that although Dr. Rosenberg's opinion was based on an in-person examination of Plaintiff, it preceded the

amended onset date. In addition, the ALJ observed, Dr. Rosenberg's findings regarding Plaintiff's limitations with regard to rotating the cervical spine and engaging in overhead reaching were not fully supported by the medical record as "the majority of [Plaintiff]'s physical examinations . . . were seen to be unremarkable." However, the ALJ found Dr. Rosenberg's "opinion pertaining to [Plaintiff]'s limitations affecting the right hand are supported by the . . . EMG study" in the record. Therefore, the ALJ determined, "Dr. Rosenberg's opinion will be given partial weight."

As an initial matter, the Court finds that Dr. Rosenberg's opinion was not rendered stale as the result of Plaintiff's subsequent stroke, seizure, and two partial toe amputations. "While the mere passage of time does not necessarily render a medical opinion outdated or stale, subsequent surgeries and treatment notes indicating a claimant's condition has deteriorated may."
*Moon v. Comm'r of Soc. Sec.*, No. 17-CV01312-MAT, 2019 WL 2240235, at *6 (W.D.N.Y. May 24, 2019) (citing *Jones v. Colvin*, No. 13-CV-06443, 2014 WL 256593, at *7 (W.D.N.Y. June 6, 2014) (ALJ should not have relied on a medical opinion in part because it "was 1.5 years stale" as of the plaintiff's hearing date and "did not account for her deteriorating condition"); *Girolamo v. Colvin*, No. 13-CV-06309(MAT), 2014 WL 2207993, at *7-8 (W.D.N.Y. May 28, 2014) (ALJ should not have afforded "great" weight to medical opinions rendered before plaintiff's second surgery)).

Here, the Court finds that while Plaintiff's stroke, seizure, and two partial toe amputations are not insignificant medical events, they did not cause a deterioration in Plaintiff's condition or functional abilities. With regard to the stroke and seizures, it is significant that Plaintiff's attorney described them as "almost non-severe," "with no noted . . . residual effects[.]" T.39.

With regard to the two partial toe amputations, the record does not reflect that Plaintiff had any limitations on his exertional abilities as a result. As discussed above, Plaintiff's treatment providers consistently noted that he was walking normally and had no neurological abnormalities; indeed, in February 2016, he reported to PA Anderson that he walked five miles a day. T.276.

Since there is no indication that Plaintiff's condition deteriorated after the issuance of Dr. Rosenberg's opinion, the Court does not find that it should be deemed "stale." *See*, *e.g.*, *Andrews v. Berryhill*, No. 17-CV-6368 (MAT), 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) ("The record does not support the conclusion that Plaintiff's condition had significantly deteriorated after the issuance of Dr. Brownfeld and Dr. Selesner's opinions such that they were rendered stale or incomplete.") (citation omitted).

Plaintiff's primary critique of the ALJ's treatment of Dr. Rosenberg's opinion is that the ALJ "rejected the moderate limitations assessed . . . because they were allegedly inconsistent with [the] . . . treatment notes." Pl.'s Mem. at 9-10. Plaintiff

contends that the ALJ "'arbitrarily substitute[d] [her] own judgment for competent medical opinion.'" *Id.* at 10 (quotation and internal quotation marks omitted). As discussed below, this assessment of the relevant records is supported by substantial evidence.

Dr. Rosenberg assigned moderate limitations in bending, lifting, pushing, pulling, reaching repetitively with his arms, twisting and turning his neck, performing overhead activities, and lifting heavy objects. Of these, the ALJ only rejected the limitations on "rotating the cervical spine and engaging in overhead reaching" as not "fully supported by the record" since the "majority of the physical examinations" were "unremarkable." For instance, in April 2014, Dr. Rosenberg himself did not find any decreased range of motion ("ROM") in Plaintiff's left shoulder. The right shoulder was somewhat decreased on elevation, abduction, and external rotation, but the "remainder of right shoulder ROM [was] full." T.241.

Although Plaintiff reported that his lawnmower accident in June 2014 had aggravated his neck and shoulder pain, T.312, Dr. Shafi Raza observed in July 2014, that Plaintiff had full range of motion in his neck and back and full muscle strength and neurological function in his arms and legs. T.258. Dr. Raza did observe that Plaintiff had some shoulder weakness and pain with internal rotation, and accordingly prescribed pain medication and

recommended physical therapy. *Id.* However, Plaintiff never followed up with the physical therapy recommendation. And, although he requested stronger pain medications from Dr. Raza in April 2015, his musculoskeletal examination was normal and he had normal motor strength in his upper and lower extremities without any neurological abnormalities. T.270.

In December 2015, Dr. Sameer Gunukula observed that Plaintiff had normal range of motion in his neck, arms, and legs and normal neurological and motor function. T.327, 342. On review of systems, Dr. Gunukula noted that Plaintiff's neck was "[n]egative for injury or . . . pain with movement." T.327. Dr. Gunukula's examination of Plaintiff's neck revealed no vertebral tenderness or crepitus; Plaintiff's ROM was "normal," "supple," and "without pain;" and he had "no range of motions limitations." *Id.*

In February 2016, Plaintiff did not complain of shoulder pain to PA Anderson, who found that he had full range of motion on examination of his extremities and musculoskeletal system. T.280. Shoulder pain was not one of the diagnoses listed. T.279. Plaintiff was given a 30-day prescription for Norco, but he said that a 30-day supply would last him two to three months, T.281, suggesting that he did not need to take it very frequently. Plaintiff's failure to pursue physical therapy as recommended by Dr. Raza and the fact that he took his pain medications less frequently than prescribed suggest that his shoulder pain was not so severe as to

be disabling, contrary to his testimony. *See*, *e.g.*, *Bitz v. Colvin*, No. 14-CV-7453(ADS), 2016 WL 1595383, at *13 (E.D.N.Y. Apr. 20, 2016) ("When viewed in light of the lack of any other medical evidence within the relevant disability period corroborating the Plaintiff's complaints, the fact that the Plaintiff waited nearly a year and a half to seek follow-up treatment for her back pain does, at the very least, suggest that the Plaintiff did not suffer from a totally disabling impairment.") (citing, *inter alia*, *Banks v. Astrue*, 955 F. Supp.2d 178, 190 (W.D.N.Y. 2013) (affirming an ALJ's decision to discredit a plaintiff's credibility, in part, because "the [p]laintiff's failure to seek followup treatment for alleged physical ailments contradicted his claims of total disability and severe symptoms.")).

It bears noting that the only aspect of the ALJ's weighing of Dr. Rosenberg's opinion with which Plaintiff appears to take issue is the "moderate" limitation on "frequent overhead reaching."[2] Dr. Rosenberg did not assign any limitations as to Plaintiff's ability to sit, stand, or walk, and none are supported by the record, including Plaintiff's own statements. With regard to Plaintiff's ability to lift and carry, the ALJ accepted Dr. Rosenberg's moderate limitations and limited Plaintiff to light work. In any event, the Court notes that Plaintiff himself

---

[2] At the hearing, counsel's only questioning of the VE pertained to whether the jobs identified would still be available if the hypothetical claimant could only reach overhead occasionally instead of frequently. *See* T.70.

testified that he could occasionally lift 20 pounds, T.51-52, which is not inconsistent with light work. The ALJ likewise accepted Dr. Rosenberg's moderate limitations as to bending by limiting Plaintiff to only occasional stooping. After reviewing the record, the Court concludes that the RFC assessment was not formulated based solely on the ALJ's lay opinion. Rather, the ALJ accepted almost all of Dr. Rosenberg's medical source statement and incorporated limitations that were congruent with it and supported by substantial evidence. Plaintiff's challenge to the RFC simply reflects a disagreement between the parties about how to weigh the evidence. "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")). Where "there is substantial evidence to support either position, the determination is one to be made by the fact-finder[.]" *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990). Here, there is ample evidence supporting the ALJ's weighing of Dr. Rosenberg's opinion and the RFC assessment. Therefore, the Court must "regard th[e]s[e] determination[s] as conclusive."

*Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. 2001) (summary order).

## V. Conclusion

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and contains no errors of law. Accordingly, it is affirmed. The Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied. The Clerk of Court is directed to close this case.

**SO ORDERED.**

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:    September 24, 2019
          Rochester, New York